FRANK C. RICHARDSON, executor, *vs*. MATILDA W. BLY & others.

Essex.    January 15, 1902. — March 7, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Will*, Sanity, Undue influence. *Practice, Civil*, Rulings and Instructions.

In the absence of evidence to the contrary there is a presumption of the sanity of a testator. If evidence is introduced to rebut this presumption the burden of proof is on the executor to prove sanity on all the evidence including the presumption.

The fact that a certain person was at the same time the friend, housekeeper and nurse of a testator does not as matter of law create a suspicion of undue influence.

When a request for a ruling is so drawn that to give it as written might be taken

by the jury to convey some intimation from the judge in favor of the party requesting it, the judge for this reason alone may decline to give the ruling in the form requested.

APPEAL from a decree of the Probate Court for the County of Essex allowing certain instruments as the will and codicil of Elias E. Porter.

The case was tried before *Lathrop*, J., with a jury, to whom the justice submitted the following issues:

"First.   Were the instruments offered for probate as and for the last will and testament and codicil of Elias E. Porter, late of Danvers, in said county of Essex, deceased, duly executed by the said Elias E. Porter as and for his last will and testament, and codicil in the presence of three competent witnesses, who subscribed the same in his presence?

"Second.   At the time of signing said instrument was the said Elias E. Porter of sound mind?

"Third.   Was the execution of said papers, and the signature of the said Elias E. Porter to the same, procured by the fraud and undue influence of Jane Anderson and James Anderson and Robert Anderson, or either of them?"

The jury answered the first two issues in the affirmative and the third in the negative; and the appellants alleged exceptions.

*J. W. Porter & J. M. Raymond*, for the appellants.

*H. P. Moulton & D. N. Crowley*, for the executor.

BARKER, J.   This case comes here upon exceptions taken by the contestants upon the trial by a jury of the usual issues as to two instruments, the one propounded for allowance as a will, and the other as a codicil.   The exceptions are to the refusal to give rulings requested and to instructions given.   There seems to have been no contention that the instruments were not in fact executed and with the required formalities, but the contestants, who were cousins of the testator and his only heirs at law, did contend that he was not of sound mind and that the instruments propounded were procured by the undue influence of three persons.   One of these persons was the housekeeper and nurse.   Another of them was a son of the housekeeper and was often a member of the family and between the execution of the will and that of the codicil received from the testator a deed of his farm upon consideration that the grantee would sup-

port the testator and furnish him with what he should need. The other of the three persons was also a son of the housekeeper. The testator's property when the will was executed was worth about $30,000. Of the four heirs at law one was given a legacy of $2,000, another a legacy of $500, and the other two were not mentioned in the will or the codicil. The will gave to the housekeeper a legacy of $5,000, and to each of her two sons a legacy of $2,000, but the legacy to the one who was not the grantee of the farm was revoked by the codicil. The residue of the property was bequeathed to persons other than the heirs, and who do not appear to have been relatives of the persons who are alleged to have procured the will and codicil by undue influence. The trial seems to have been a long one, with much evidence introduced by each party upon the questions of soundness of mind and undue influence.

One of the rulings requested was that " if upon the whole evidence it is left uncertain whether the testator was of sound mind or not, then it is left uncertain whether there was under the law a person capable of making the will ; and the will cannot be proved ; and this applies also to the codicil." This instruction was given in terms, and the jury were further fully and correctly instructed as to the burden of proof upon both the contested issues and as to both will and codicil. The judge also instructed the jury as follows: " That although the executor has the burden of proof upon him, on all the evidence to satisfy you that the testator was of sound mind at those times, or at one or the other of them, there is a presumption of his sanity ; that presumption of course is a rebuttable presumption, and a question for you upon the whole evidence as I have stated. Of course it is presumed that every man is sane, and that presumption stands until it is rebutted. In this case the executor started off in the usual manner of trying these cases, by putting on the attesting witnesses to the will, and the presumption of sanity. Then the other side put in what they contend shows the contrary, and then the executor closed. On the whole evidence the executor has this burden to satisfy you on the evidence." To this instruction the contestants excepted and asked the presiding judge to rule that there is no presumption of sanity when the question of unsoundness of mind is in issue in a hear-

ing on the validity of a will, and they excepted to the refusal so to rule.   The instruction given was right and that requested in place of it was wrong.   *Baxter* v. *Abbott*, 7 Gray, 71, 83, over-ruling the dictum to the contrary in *Crowninshield* v. *Crownin-shield*, 2 Gray, 524, 532.

The four requests refused were these:

1. If Jane Anderson and James Anderson, or either of them, had acquired an influence over the testator, whether by kind offices of duty, or affection, or attentions to his bodily infir-mities, and that influence was made use of improperly for the purpose of inducing the testator to execute an instrument, in this case, the will or the codicil, or both, in such a manner and to such a degree as to substitute the will of either or both of the persons named in place of that of the testator, such influ-ence was undue influence; and the will or codicil or both, if made under such influence, would be void.

2. If the jury find upon the whole evidence, that Jane Ander-son at the time when the will and codicil were made, and for a long time prior thereto, was the friend, housekeeper and nurse of the testator, this relation would create a suspicion of undue influence, which might be considered by the jury without any direct proof of such influence.

4. If the jury find from the evidence that, at or about the time when the will or codicil was made, the testator was, in other important particulars, so under the influence of Jane An-derson and James Anderson, or of either of them, that, as to them he was not free, but was acting under undue influence, the cir-cumstances may be such as to fairly warrant the conclusion, from the absence of any evidence bearing directly upon acts done when the will or codicil was actually made, that in relation to those also, the same undue influence was exerted.

6. When a person, charged with the exercise of undue influ-ence, having no claims from relationship, derives a considerable benefit under a will, evidence of direct influence used at its making is not required.   The fact of the influence exerted may be gathered from all the circumstances surrounding the testator, — his health, age and mental condition, how far he was de-pendent upon and subject to the control of the person bene-fited, the opportunity which the person deriving a considerable

benefit under the will had to exercise his or her influence and the disposition of the testator to be subject to it; and the fact of influence by the person deriving such benefit being established, it is not necessary to show by absolute evidence that it was exerted by such person at the time the will was made.

The second of these requests required the presiding justice to rule as matter of law that whenever one person was at once the friend, housekeeper and nurse of a testator the relation would create a suspicion of undue influence. But in neither aspect does the person stand in a fiduciary relation to the testator. The request was rightly refused because wrong in law.

All the matters treated of in the other three requests to the refusal to give which as asked exception was taken were dealt with in the charge fully and correctly and some of them with more of detail and particularity than in the requests. Leaving the jury at liberty to find undue influence upon the evidence as it stood the presiding justice was not bound to rule that upon some certain state of facts such influence need not be shown by direct evidence. Requests for rulings are often so drawn that to give them as written may be taken by a jury to convey some intimation from the bench in favor of the party at whose request they are made, and for this reason alone a justice charging a jury may decline to give instructions in the form asked for. It is enough if he instructs the jury correctly upon all matters necessary for their guidance, in his own language. In the present case this was done fully and without error.

*Exceptions overruled.*