GEORGE F. HOGAN & another, executors, *vs.* STANLEY L. WHITTEMORE.

Essex.     November 13, 1931. — March 29, 1932.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Will,* Validity. *Probate Court,* Appeal, Findings by judge. *Undue Influence.*

Where, at the hearing of a petition in a probate court for proof of a will, a stenographer having been appointed under G. L. c. 215, § 18, as amended, no question as to the testamentary capacity of the testator was raised and there was evidence that the final form of the will was the same as a draft prepared in accordance with the testator's instructions and read and approved by him, who looked the final form over from "page to page" and then signed each page of it in the presence of three witnesses, declaring it to be his will and requesting the witnesses to sign it as such; that they thereupon did so in his presence; that the will as executed fully carried out the testator's wishes; and that all the pages thereof were typewritten by the same person at the same time and there was no tampering with the will after its execution, this court, on appeal from a decree allowing the will, could not pronounce erroneous specific findings by the judge of probate to the effect that the will was executed legally, although the respondent introduced evidence that one of the witnesses to the will did not see the testator sign it and that he did not notice the testator's signature on the will when he signed; that certain statements by the testator of his intended disposition of his property were inconsistent with the provisions of the will; and that one of the pages

was not the original page, but a substituted page upon which the testator's signature was a forgery.

This court, upon the appeal above described, could not pronounce erroneous a further finding by the judge of probate that the will was not procured by the undue influence of the testator's widow, it appearing that she was his second wife and that his other relatives were his mother, a son by a former marriage and a daughter of the son; that the testator was a man sixty years of age, strong mentally and physically and actively engaged in business; that the will, which made provision for the son and widow and left the residue to the widow, but made no provision for the mother and granddaughter, was not necessarily unreasonable, although the respondent, the son, introduced evidence to the effect that the widow exercised control over the testator and his business and that she had tried to turn him against the respondent.

PETITION, filed in the Probate Court for the county of Essex on November 24, 1930, for proof of the will of Carrol C. Whittemore, late of Nahant.

The petition was heard by *White*, J., a stenographer having been appointed under G. L. c. 215, § 18, as amended. Material evidence and findings by the judge are stated in the opinion. A decree was entered allowing the petition. The respondent appealed.

*W. H. Irish,* for the respondent.

*S. Parsons,* (*A. G. Wadleigh* with him,) for the petitioners.

FIELD, J. This is an appeal from a decree of the Probate Court allowing the will of Carrol C. Whittemore, late of Nahant. The appellant is his son, Stanley L. Whittemore. The evidence is reported.

Carrol C. Whittemore died November 18, 1930, leaving a widow, Mary Edna Whittemore; an only child, the appellant, born of a previous marriage; a mother, and a granddaughter, the daughter of the appellant. The instrument offered for probate is typewritten upon four pages attached to a cover. The first page contains bequests and devises to Mary Edna Whittemore, including the devise of a building in Boston "used by the Whittemore Ice Cream & Catering Co." The second page contains several clauses dealing with the business of that company, providing that it is to be continued by the executors, that certain persons are to be continued in its employ at fixed wages and percentages of

the profits — among them the appellant at a salary of $50 a week and five per cent of such profits — so long as their services are satisfactory to the appellant and to Mary Edna Whittemore, that certain moneys on deposit "in the name of Carrol Charles Whittemore" shall remain on deposit "during the business of said Whittemore Ice Cream & Catering Co., for a medium with which to do said business, and when said business is finally closed out or materially changed, said money is to revert to my residuary clause," and that no rent shall be charged for the use of the building, but "taxes, mortgage expenses and upkeep in maintaining said building in proper condition are to be paid from the estate." The third page contains a provision that "the earnings of the said business above the running expenses and percentages as before enumerated, are to be equally divided between" the appellant and Mary Edna Whittemore, and clauses giving to her the residue of the estate and naming her and George F. Hogan executors. No provision is made in the instrument for the mother or the granddaughter of the deceased. On its fourth page it purports to have been signed on October 5, 1927, by Carrol C. Whittemore as his last will and testament and, on that date, to have been subscribed in his presence by three persons as witnesses, who recite that he signed it, "declaring it to be his last will and testament," in their presence. The instrument has his purported signature at the foot of each of the other pages.

The appellant contends that the instrument was not duly executed, that it "does not duly and legally set forth the expressed wishes of the testator as to the disposition of his property," that it was changed and invalidated by the insertion of page 3 thereof in place of the original page 3, the signature of the deceased on the inserted page being forged, and that the instrument was procured to be made by the fraud or undue influence of Mary Edna Whittemore.

The probate judge found specifically as follows: "I find with no hesitation whatsoever that the will was duly and legally executed. I do not find that the will was procured to be made under the fraud or undue influence of Mary

Edna Whittemore. I do find that the will was not changed by the insertion of page 3 in place of the original page 3 of the will. I do find that the signature of the testator on page 3 of the will was not forged, and from all the evidence I find that the will expresses the wishes of the testator as to the disposition of his property."

The established rule by which we are governed on an appeal of this nature was stated in *Needham Trust Co.* v. *Cookson*, 251 Mass. 160, 163, as follows: "When a case has been heard upon oral testimony, it is not for this court to say what witnesses the trial court should believe; and if the evidence is conflicting, his decision will not be reversed unless it is plainly wrong." See also *Collis* v. *Walker*, 272 Mass. 46, 47. We cannot say that in this case the probate judge was plainly wrong.

The testamentary capacity of the deceased is not questioned. Such evidence as there was of his physical and mental condition is relied upon by the appellant only as tending to show his susceptibility to the influence of his wife.

The burden of proving due execution of the instrument, which rested upon its proponents, required proof not only of formal execution in accordance with the statute (G. L. c. 191, § 1), but also proof that the testator executed it with knowledge of its contents and an intention that it should be his last will and testament. *Richardson* v. *Richards*, 226 Mass. 240, 245. *Fuller* v. *Sylvia*, 240 Mass. 49, 54. The evidence directly or by reasonable inference justifies the conclusion that these essential facts were established.

There was evidence which, in spite of inconsistencies therein as to date and circumstances, warranted findings of formal execution and of testamentary intention. As there was evidence that in the presence of all three attesting witnesses the deceased signed the instrument, stating that it was his will and requesting them to sign as witnesses, and that thereafter they did so in his presence, it is not necessarily fatal that one of those witnesses testified that she did not see the deceased sign the instrument and that, when she signed she did not notice his signature thereon,

though she "should say" that his name written on the instrument was his signature. Such testimony merely affects the weight of the evidence as a whole. See *Leatherbee* v. *Leatherbee*, 247 Mass. 138.

Knowledge by the deceased of the contents of the instrument was fairly inferable from the evidence. The draftsman testified that he received instructions from the deceased for making a will, prepared a draft which the deceased read and approved, put the instrument in completed form without change, and submitted it to the deceased who looked it over from "page to page" and then signed it, and that the instrument as executed, in his opinion, carried out fully the wishes of the deceased. Nothing in the testimony of the draftsman required the conclusion that the instrument as executed departed from the instructions of the deceased. See *Collis* v. *Walker*, 272 Mass. 46, 48. The judge may have disbelieved the testimony of various persons in regard to statements of the deceased as to his intended disposition of his property. But even if this testimony was believed the statements to a considerable extent were consistent with the disposition made by the instrument and, so far as they are to be interpreted as inconsistent therewith, did not require the conclusion that the deceased did not know the contents of the instrument or did not intend it to take effect as his will.

The evidence warranted a finding that the third page of the instrument offered for probate was the original third page and not, as the appellant contends, a substituted third page upon which the name of the deceased was forged. It appeared that the deceased wrote his name on each page of the original instrument. It could have been found that the widow was in possession of the instrument for a time after his death. A handwriting expert, called by the appellant, testified, upon examination of the third page, that, in his opinion, the deceased's name written thereon was written fully a year before his name was written on the other pages and was a forgery, that at some time the instrument had been taken apart, and that the cover and pages 1, 2 and 4 each had two perforations where the

staples were put in, while page 3 had only one. But a handwriting expert, called by the proponents, testified that, in his opinion, all the pages were written upon the same typewriter, with the same typewriter ribbon, and by the same operator, and all the signatures were made with the same ink and could have been made at the same time; the widow testified that she did not substitute a third page, trace any signature, or tamper with the instrument in any way; and the draftsman testified that there was no interpolation of a third page, and that the provisions thereon were in accordance with the instructions given him by the deceased. Clearly it cannot be said on this and the other evidence in the case that the judge was plainly wrong.

Nor was the judge plainly wrong in his conclusion that the alleged will was not procured to be made through the fraud or undue influence of Mary Edna Whittemore. The burden of proving fraud or undue influence was on the appellant. *Bacon* v. *Bacon,* 181 Mass. 18. He urges, in support of his contention, the failure of the deceased to provide for his granddaughter and to give his business to his son. It is not controverted that the deceased's relations with his son and with his granddaughter were friendly and intimate, nor that the son was working with his father in the business. However, it cannot be said that the alleged will in these respects is necessarily unreasonable, especially in view of circumstances disclosed by the evidence. Moreover, there was evidence of statements by the deceased that his granddaughter "would be taken care of if anything happened to him" and to the effect that his son would be well provided for, and that he intended to leave the business to him. These statements have been referred to already in connection with the question of the deceased's knowledge of the contents of the instrument, and what is said there is applicable to these statements so far as they bear upon the question of fraud and undue influence. The appellant relies upon testimony that Mary Edna Whittemore exercised control over her husband's business, that he gave instructions that she was to have her own way, and that he made statements at various times

to the effect that he yielded to her wishes in order to avoid disturbance which he could not stand and which affected his health.   There was testimony, also, to statements by the deceased that he realized that his wife was trying to get all she could, that she did not like, and was trying to turn him against, his own son, and that "They" made him make a will.   On the other hand, there was evidence that at the time the will was made the deceased was a man about sixty years old, actively engaged in business, strong mentally, and not in feeble health.   No direct evidence of deception or coercion on the occasion of the execution of the instrument was adduced.   Further statement of the evidence is not required.   Nor need we consider whether a finding in favor of the appellant on this issue would have been warranted.   See *Neill* v. *Brackett,* 234 Mass. 367.   The credibility of the witnesses and the weight of their testimony were for the probate judge to determine.   There is nothing in the case to justify a reversal of his decision.

*Decree affirmed.*