JOHN S. SLATER & another *vs.* GRACE J. MUNROE & others.

Barnstable. November 9, 10, 1943. — April 29, 1944.

Present: FIELD, C.J., LUMMUS, QUA, & RONAN, JJ.

*Probate Court,* Jury issues. *Unsound Mind. Undue Influence. Attorney at Law.*

In a contested will case there was no error in the denial of a motion for
a jury issue as to the testamentary capacity of the decedent, presented
by her sister, her nearest relative, who had been disinherited by the
alleged will, where it appeared that the decedent was an elderly woman
who had committed suicide ten months after making the alleged will,
and medical testimony and statements of expected medical evidence
as to the decedent's mental condition were conflicting, ample reason
for the disinheritance was shown in a family quarrel which went into
litigation, and the circumstances of the suicide did not appear.

Statements of expected evidence at the hearing of a motion for jury issues
in a contested will case did not show that any part of the alleged will
had been procured through undue influence of attorneys in whose
office it had been drawn and executed and to whom were given legacies
which, although substantial, were a very small part of the decedent's
estate.

PETITION, filed in the Probate Court for the county of
Barnstable on October 29, 1941, for proof of the will of
Susan J. Ulm.

Proceedings respecting the domicil of the decedent are
reported in 313 Mass. 538.

Following that decision the contestants filed a motion for
jury issues, which was denied by *Campbell,* J. The contest-
ants appealed.

*F. H. Stewart,* (*J. B. Ford* with him,) for the contestants.

*E. O. Proctor,* (*C. M. Goldman* with him,) for the propo-
nents.

QUA, J. The instrument offered for probate was exe-
cuted December 10, 1940, when the decedent was about
sixty-six years of age. She committed suicide by drowning
on October 21, 1941, ten months afterwards. In the instru-
ment now offered she gave $1 to her only surviving sister,

although in a former will executed in 1926 she had made her sisters then living equal beneficiaries. See *Slater* v. *Munroe,* 313 Mass. 538.

To support their contention that an issue should have been framed as to testamentary capacity at the time of execution of the instrument, the appellants principally rely upon expected evidence of the following tenor. A physician who attended the decedent in California in 1927 "states" that at that time she was subject to hallucinations of a nature not described and to "protracted periods of depression and irrational unbalance," and that she had "suicidal ideas." By 1929 she had recovered "to a great extent." When asked whether this physician was alive and would testify as set forth above, counsel for the appellants replied, "All these are statements that we understand witnesses will support" and that he had "been furnished with a statement which the doctor is supposed to have given." In 1931, shortly after her husband died, the decedent was treated by a psychiatrist who, counsel for the appellants stated, would now testify that at the time of making the will the decedent suffered from "two forms of insanity" — a "manic depressive psychosis" and "senile paranoia," and that the latter disease tends to produce delusions of persecution. It appeared, however, that this same psychiatrist, while actually treating the decedent in 1931, had been inclined to reject the diagnosis of "manic depressive psychosis" and had adopted it only recently after talking with the attorney for the appellants and receiving additional information from various sources, just what information did not appear. And in 1931 the psychiatrist made no mention of "senile paranoia." Later in this same proceeding, when called to the stand at the suggestion of the judge of probate, this witness gave his opinion that the decedent "was not of sound and disposing mind," but said nothing of either "manic depressive psychosis" or of "senile paranoia." The appellants argue that the mental condition of the decedent caused her to entertain unfounded suspicions of her sister and led to the disinheriting of the sister in the instrument offered for probate.

The proponents offered signed statements of two physicians who had treated the decedent in 1931 and upon subsequent occasions, coming close to the period of executing the instrument, to the effect that she never exhibited any evidence of insanity and (according to one physician) was "evidently of a sound and disposing mind" and (according to the other physician) "was of firm and vigorous will." A third physician, who had long been acquainted with the decedent and is described as her family physician during the many years while she lived in Chicago, would testify that she fully recovered from her illness in California, and that in the winter after the instrument was executed she was alert and active and "unquestionably sound of mind." In addition, the proponents offer a mass of evidence from many sources showing that just before and at the time of executing the instrument the deceased was conducting large business and financial affairs, including her part in litigation hereinafter mentioned, with great care, vigor, acumen, and energy, and with complete competence. The disinheriting of the surviving sister is fully explained by the history of an unfortunate family quarrel in reference to a hotel which three sisters had operated as partners. All three had taken part in the quarrel, which had been carried on with bitterness and had led to litigation instituted by the subsequently disinherited sister against the decedent and the third sister. This controversy, whoever may have been to blame for it, could not have been the result of any insane delusion on the part of the decedent, and it was of such a nature that it would have been extraordinary if, after all that occurred, the surviving sister had been named as a beneficiary by the decedent. So far as we can see the instrument offered as a will would be in all respects a reasonable one for a woman in the position of the decedent to make.

If this case were tried to a jury it might be error to direct a verdict in favor of the proponents on this evidence. But that is not the test for the framing of issues. *Ware* v. *Morton*, 288 Mass. 107, 109. There must be "a genuine and doubtful question of fact" and "a reasonable hope for

a result favorable to the party requesting the framing of issues." *Fuller* v. *Sylvia,* 240 Mass. 49, 53. A careful examination of all of the expected evidence, which has been here stated only in the barest outline, with the allowance of proper weight to the opinion of the judge of probate, who saw and heard the appellants' principal witness, leaves us unconvinced that such question of fact and such reasonable hope exist, notwithstanding the subsequent suicide of the decedent, the circumstances of which do not appear.

The issue of undue influence is sought on the ground that the instrument offered for probate was drawn by the attorneys whom the deceased had employed in the hotel controversy and was executed in their office in the presence of one of them and was witnessed by their employees, and that it gave legacies to these attorneys of $10,000 and $5,000 respectively, directed the executors and trustees to retain them as attorneys, and appointed one of them and a trust company joint executors and trustees. In spite of various arguments by the appellants we perceive nothing reaching the dignity of evidence of actual exercise of any influence in any manner by these attorneys. But the fact that they received legacies under the will would ordinarily call for careful scrutiny. In this instance, however, the legacies, though substantial, represented a very small part of an estate which could not have been much under $500,000, and may well have exceeded $750,000. The deceased had both written and spoken to friends at about the time the instrument was made expressing the highest regard for her attorneys both professionally and as friends. She had stated that she thought their charges had been small and less than those of the attorneys for other parties in the same matter. There is no ground even for suspicion that these attorneys influenced the decedent in making any of the other legacies or in the disposition of the residue. See *Wellman* v. *Carter,* 286 Mass. 237, 248–250. On all the evidence offered we think the case falls on the opposite side of the line from *Tarr* v. *Vivian,* 272 Mass. 150, and other cases cited by the contestants, and that there was no error in denying this issue also.

*Order denying motion for jury issues affirmed.*