WILLIAM J. CLEARY, JR. *vs.* ROBERT B. CLEARY.

Middlesex. March 5, 1998. - April 14, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Annuity. Fiduciary. Contract,* Performance and breach. *Practice, Civil,* Burden of proof. *Consumer Protection Act,* Availability of remedy.

Discussion of cases considering the burden of proof in a claim challenging a transaction between a fiduciary and a principal, alleging a breach of fiduciary duty. [290-295]

This court concluded that a fiduciary who benefits in a transaction with the person for whom he is a fiduciary bears the burden, when challenged, of establishing that the transaction did not violate his fiduciary obligations. [295]

In a civil claim challenging the actions of a fiduciary who assisted his aunt in designating him as the beneficiary of her annuity policies, the judge incorrectly allocated the burden of proof to the plaintiff to establish impropriety in the fiduciary relationship rather than to the defendant to demonstrate otherwise; the matter was remanded for further proceedings including consideration of a predicate G. L. c. 93A claim. [295-296, 297]


CIVIL ACTION commenced in the Superior Court Department on August 2, 1993.

The case was heard by *David M. Roseman, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Joseph F. Ryan* for the plaintiff.

*Harold Hestnes* for the defendant.

FRIED, J. Two brothers, the plaintiff, William Cleary, and the defendant, Robert Cleary, were the nephews of the late Mary O'Connell. The plaintiff challenges a transaction that occurred shortly prior to Mary's death, in which the defendant, Mary's insurance agent and attorney-in-fact, assisted her in designating himself the beneficiary of two annuity policies worth approximately $446,000. We hold that the defendant bore the burden of proving that in rendering assistance he did not breach his fiduciary duty to Mary, and remand the case to the Superior Court.

## I

In 1984, the defendant, a licensed insurance agent, assisted Mary in acquiring four annuity policies — designated S56, S57, S58, and S59 — each of which provided the owner with the amount invested plus a guaranteed rate of interest if the policy matured prior to the owner's death or provided a beneficiary with that amount if it matured after the owner's death.[1] Each policy included the following provision:

> "Change of Beneficiary must be in written form satisfactory to the Company and signed by the Owner. The change will be effective as of the date of signing by the Owner, whether or not the Owner or Insured is living at the time of receipt at the Home Office of the Company . . . ."

At the time the policies were issued, Mary provided that the proceeds were to be distributed sixty-five per cent to the defendant and thirty-five per cent to the plaintiff. In 1988, Mary changed the designated beneficiary for each of the four policies from the brothers to her estate. At that time, William and Robert would have benefited equally under Mary's will. In 1989, Mary changed her will, adding some specific bequests but leaving the brothers as equal residuary beneficiaries.

Because policies S58 and S59 were due to mature in 1989, the defendant presented Mary in December, 1989, with a form, an "APP-486" used for this purpose, so that she could extend the policies' maturity dates. The record does not show whether the APP-486 form was blank when Mary signed it or whether the defendant filled it in prior to her signature. Apparently it was the defendant's practice to have clients sign blank forms that he would then fill in at his office. In 1990, policies S56 and S57 matured. The defendant did not immediately extend their dates of maturity.

In 1990, the plaintiff and the defendant had a business dispute, as a result of which they were no longer speaking to each other. The defendant claims that, in the summer of 1990, Mary asked him to get her "the forms" so that she could designate him as the sole beneficiary of the four insurance policies. The defendant sent a service request form to New England Mutual Life Insur-

---

[1]This statement of facts is based on the judge's memorandum below, supplemented by our reading of the record. We have indicated where the parties continue to disagree about material facts.

ance Company (New England Mutual Life) to initiate this process, although the agency never received the request and the plaintiff claims that the defendant did not take such action. On December 10, 1990, Mary executed a new will, reducing the number of specific bequests, keeping the plaintiff and the defendant as equal residuary beneficiaries, and naming the defendant as her executor and the plaintiff the alternate executor. She also gave the defendant a durable power of attorney. On December 19, 1990, Mary designated the defendant as the beneficiary of a $5,000 Boston Mutual Life Insurance Company policy. In January, 1991, the defendant, acting under his power of attorney, took control of Mary's checking account.

At the end of January, 1991, New England Mutual Life again notified the defendant that policies S56 and S57 had matured and needed to be acted on. On January 29 or 30, the defendant brought Mary an APP-486 form at her nursing home. He testified that he told her that the form would extend the maturity date on two of the four policies and that the form would designate him as the sole beneficiary, as she had requested some five months prior. He did not tell her which of the four policies he was referring to, and there is conflicting testimony whether the form was blank when Mary signed it. Apparently the defendant had Suzanne Sciarappa assist him with filling out the form at his office. Sciarappa testified that originally she listed policies S58 and S59 on the form, although the defendant had previously extended the maturity dates on those annuities. Policies S58 and S59 were collectively worth approximately $115,000. Sciarappa later wrote over these numbers, changing them to policies S56 and S57 — worth approximately $446,000. Mary did not initial these changes.

The defendant testified that he had never before used an APP-486 form to change the beneficiary on an annuity. Normally a change of beneficiary form would be used, such as the form used when Mary designated her estate as the beneficiary of the four policies. The defendant asserts, however, that Sciarappa telephoned New England Mutual Life prior to executing the APP-486 form and asked whether such a form could be used to change the beneficiary on an annuity. According to Sciarappa, New England Mutual Life indicated that an APP-486 form could be used for that purpose. The plaintiff contests this evidence, claiming that Sciarappa did not call New England Mutual Life until *after* the APP-486 form was already

submitted. He also notes that New England Mutual Life requires that any overwrites on a change of beneficiary form be initialed by the owner.

On February 14, 1991, New England Mutual Life issued endorsements stating that policies S56 and S57 had been extended. The endorsements did not mention a change of beneficiary. Mary died on March 11, 1991. On March 28, 1991, the defendant brought New England Mutual Life a service request form, dated October 29, 1990, that he claimed had been in his files since that time. He then attempted to collect on all four of the policies. On review, New England Mutual Life determined that it would pay the defendant on policies S56 and S57 — because of the APP-486 form — but not on policies S58 and S59.

On December 23, 1992, after the plaintiff received an accounting of the estate that showed that the estate had paid significant Federal income taxes but did not show assets justifying such tax payments, he discovered that $446,000 had been paid to the defendant on policies S56 and S57 and that the defendant had used estate proceeds to pay the taxes on those policies. On May 12, 1993, after unsuccessfully seeking answers from the defendant regarding these matters, the plaintiff sent a G. L. c. 93A demand letter requesting that the defendant rectify problems surrounding the administration of the estate. In response, the defendant agreed to reimburse the estate for the money used to pay the taxes on the two policies.

In August, 1993, the plaintiff commenced this action, alleging fraud, breach of fiduciary duty, breach of contract, recovery for money had and received, and violations of G. L. c. 93A, § 9. The case was tried in June, 1995. The trial judge retained all counts except the fraud count, which he submitted to the jury. The central issue at trial was whether Mary intended to designate the defendant as the sole beneficiary of policies S56 and S57 when she signed the APP-486 form. On that point, the defendant introduced testimony from Mary's lawyer and Mary's friend, Virginia Scott, that Mary was upset with the plaintiff prior to her death because he did not visit her at her nursing home and did little for her. Scott testified that Mary had said she "would very much like to leave [the plaintiff] out of [her] will."

The judge submitted the following special question to the jury on the issue of fraud:

"Did Mary J. O'Connell sign an APP-486 Form on or about January 30, 1991 with the intent that Robert Cleary be the sole beneficiary of her annuities [S56] and [S57]?"

The jury returned an affirmative response, which disposed of the fraud claim. The judge then considered the other causes of action. The judge rejected the contract action, which alleged that the defendant was in breach of the annuity contracts entered into between New England Mutual Life and Mary, because he found that the annuity policies only required that a change in beneficiary be in written form satisfactory to the issuer, and the APP-486 form signed by Mary was deemed acceptable by New England Mutual Life. He likewise found no breach of G. L. c. 93A nor grounds for a claim for money had and received. Finally, the judge "rule[d] that Robert fulfilled his fiduciary duty to Mary and that there [was] no basis for concluding there was impropriety on Robert's part." The Appeals Court, in a brief memorandum issued pursuant to its rule 1:28, adopted the conclusions of the judge and stated that "there is no basis for disturbing the judgment." 43 Mass. App. Ct. 1112 (1997). We granted the plaintiff's application for further appellate review.

## II

The plaintiff's central argument is that the judge erred in the treatment of the claim that the defendant breached a fiduciary duty to Mary. In general, a party challenging a will or other document on the ground that it was procured through fraud or undue influence bears the burden of proving the allegation by a preponderance of the evidence. See, e.g., *Tarricone* v. *Cummings*, 340 Mass. 758, 762 (1960); *Mirick* v. *Phelps*, 297 Mass. 250, 252 (1937); *Hogan* v. *Whittemore*, 278 Mass. 573, 578 (1932). The burden shifts, however, when a fiduciary benefits from a transaction with his principal.[2] In the context of attorney-client relations, we have stated that an attorney "who bargains

---

[2]We have noted a difference between cases involving fiduciary beneficiaries and those in which a beneficiary occupies a confidential but not fiduciary relationship with the deceased. See *Doggett* v. *Morse*, 299 Mass. 383, 389 (1938). "[W]here a confidential relationship exists it generally takes less to establish undue influence on the part of beneficiaries" than in the ordinary case in which the beneficiary occupies neither a confidential nor a fiduciary relationship with the deceased. *Tetrault* v. *Mahoney, Hawkes & Goldings*, 425 Mass. 456, 465 (1997). One in a confidential relationship does not, however, bear as heavy a burden as a fiduciary.

with his client in a matter of advantage to himself *must show*, if the transaction afterwards is called in question, that it was in all respects fairly and equitably conducted; that he fully and faithfully discharged all his duties to his client, not only by refraining from any misrepresentation or concealment of any material fact, but by active diligence to see that his client was fully informed of the nature and effect of the transaction proposed and of his own rights and interests in the subject matter involved, and by seeing to it that his client either has independent advice in the matter or else receives from the attorney such advice as the latter would have been expected to give had the transaction been one between his client and a stranger" (emphasis added). *Webster* v. *Kelly*, 274 Mass. 564, 571 (1931). *Hill* v. *Hall*, 191 Mass. 253, 262 (1906). In that context, the burden of proof is on the attorney to establish the validity of the transaction. See *Pollock* v. *Marshall*, 391 Mass. 543, 556-557 (1984); *Barnum* v. *Fay*, 320 Mass. 177, 181 (1946) ("the burden is upon the attorney to prove that any influence over the client which might be presumed to have arisen out of the relationship was neutralized"); *Israel* v. *Sommer*, 292 Mass. 113, 123 (1935) ("unless it appears that the presumed influence resulting from the relationship has been neutralized . . . the attorney cannot expect his bargain to stand"). And more broadly, "[t]he general rule is that one acting in a fiduciary capacity for another has the burden of proving that a transaction with himself was advantageous for the person for whom he was acting." *Witherington* v. *Nickerson*, 256 Mass. 351, 356 (1926). *Smith* v. *Smith*, 222 Mass. 102, 106 (1915) ("where a conveyance is made to one occupying a fiduciary relation, it is presumed to have been executed by reason of that relation . . . and the burden of proof is placed upon the grantee to prove that the transaction was fair and just to the grantor and was not procured through fraud or undue influence"). This burden is generally met if the fiduciary shows that his principal made the bequest with full knowledge and intent, *Pollock, supra* at 557, or with the advice of independent legal counsel. There is, however, no per se rule that an attorney must advise his client to seek independent advice in such circumstances. Instead, his failure to do so is merely evidence that the transaction was not fair and that the attorney violated his fiduciary duty. Contrast *id.*

The defendant relies on *Graves* v. *Hutchinson*, 39 Mass. App. Ct. 634, 642 (1996), and *Markell* v. *Sidney B. Pfeifer Found.*,

*Inc.*, 9 Mass. App. Ct. 412, 442-443 (1980), for the proposition that, if a fiduciary-beneficiary is related to the decedent, the burden of proof shifts back to the contestant to prove fraud or undue influence. In *Markell*, the Appeals Court considered whether a trust document providing income to the decedent's nephew and establishing a foundation in the nephew's name should be revoked because it was obtained by fraud or undue influence. The nephew suggested that his aunt form the trust and urged her to do so in considerable haste while the decedent was recovering from illness in California, far from her home. The decedent was not aware that the trust irrevocably placed her assets beyond her control. The *Markell* court stated that generally a "presumption of impropriety" applies when an attorney transacts with his client to the attorney's benefit. *Markell, supra* at 442. The court said, however, that "it is not invariably true that, when an attorney performs a legal service for another, a strict attorney-client relationship exists. Not infrequently an attorney will draft a will or do estate planning work for a relative or close friend . . . and in such a case, if the attorney . . . is named as a beneficiary, a court . . . will not apply to such a transaction the presumption of impropriety which is applied when dealing with one whose fiduciary status is uncomplicated by ties of blood, marriage, or close friendship." *Id.* at 442-443. The court stated that "[t]here is here no presumption of impropriety, whether that result is rationalized by saying that the relation was not strictly that of attorney and client or by recognizing that an attorney-client relationship is not fiduciary as matter of law when there is an overriding relationship of family or friendship." *Id.* at 443. Accord *Graves, supra* at 642 ("where the relationship is one between close family members . . . the presumption of impropriety recedes").[3]

We have not previously considered the rule stated in *Markell* and *Graves*. We do not agree that a family or other close relationship should shift the burden of proof back to a contestant. The first question in such a case is whether the beneficiary owed a fiduciary duty to the decedent. Ordinarily, family relations do not suffice to create a fiduciary relationship

---

[3]The court in *Markell* v. *Sidney B. Pfeifer Found., Inc.*, 9 Mass. App. Ct. 412 (1980), went on to decide, however, that the nephew owed a fiduciary duty to his aunt because he had long managed her financial affairs, and she relied on his judgment and integrity. The court found that the nephew had violated his duty by taking advantage of her confidences. *Id.* at 445.

that heightens scrutiny for fraud or undue influence. See *Bruno* v. *Bruno*, 384 Mass. 31, 33 (1981) (nephew); *Hogan* v. *Whittemore*, 278 Mass. 573, 578 (1932) (wife). Similarly, a nurse, housekeeper, or friend is not usually a fiduciary, and therefore the ordinary burden of proof applies. See *Mirick* v. *Phelps*, 297 Mass. 250, 252 (1937) ("roomer" and nurse); *Richardson* v. *Bly*, 181 Mass. 97, 101 (1902) (one person being nurse, housekeeper, and friend). See also *Heinrich* v. *Silvernail*, 23 Mass. App. Ct. 218, 228 (1986) (social worker at nursing home). Of course, these relations can become fiduciary if the decedent was dependent on the beneficiary in financial affairs. See generally *Bruno* v. *Bruno*, 384 Mass. 31, 33 (1981); *Stetson* v. *French*, 321 Mass. 195, 199-200 (1947); *Hawkes* v. *Lackey*, 207 Mass. 424, 431-432 (1911). And beneficiaries in "strict" fiduciary relations with the decedent, such as attorney-client, clearly owe duties to the decedent.

Once a fiduciary relationship is established, however, the fiduciary who benefits in that relationship must show that he has fulfilled his duty. Although family relations, and the fact that within such relationships "gifts or other acts of generosity are natural and to be expected," *Markell, supra* at 443, may serve as evidence of propriety, they do not shift the burden of proof back to the contestant. The fiduciary can take precautions to ensure that proof exists that the transaction was fair and that his principal was fully informed, and he is in the best position after the transaction to explain and justify it. It is his burden to do so, whether or not he is in a family or other close relationship.

The cases relied on by the Appeals Court in *Markell* and *Graves* do not require another conclusion. Most are cases in which a probate judge refused to frame the issue of fraud or undue influence for the jury, and this court upheld the decision, weighing the evidence and finding no genuine question of fact. See *Spilios* v. *Bouras*, 337 Mass. 176 (1958); *Wood* v. *McDonald*, 332 Mass. 220, 222 (1955); *Slater* v. *Munroe*, 316 Mass. 129, 131-132 (1944); *Frawley* v. *Snell*, 299 Mass. 398 (1938). In these cases, the court did not discuss the burden of proof, nor did it state that the presence of familial relations affected its analysis. Moreover, in each case the court noted that it gave the issue particularly careful scrutiny because of the fiduciary relationship involved. See *Spilios* v. *Bouras, supra* at 180; *Wood* v. *McDonald, supra*; *Slater* v. *Munroe, supra*; *Frawley* v. *Snell, supra* at 404.

The only case cited in the relevant portion of *Markell* that directly discusses burden of proof is *Smith* v. *Smith*, 222 Mass. 102 (1915). See *Markell, supra* at 442-443. In *Smith*, a man died intestate, leaving his widow and parents. At first all assumed that the estate passed to the widow, but when she discovered otherwise, she had his parents sign a release granting her their portion of their son's estate. The parents, through their daughter as next friend, then sought to rescind the release. The trial judge held that the widow was in a fiduciary relationship with her husband's parents, and therefore that she bore the burden of proving that the transaction was open and fair. *Id.* at 104. We held that the burden of proof lay with the parents because there was no fiduciary relationship. See *id.* at 106 ("undefined relation of confidence based upon friendship, respect and affection" does not shift burden of proof). The parents had not historically relied on the widow for business advice, nor did their relationship extend beyond mere friendship. The *Smith* case thus stands for the unremarkable proposition that a contestant bears the burden of proof if no fiduciary relationship is shown.

· Although we see no support in our cases for shifting the burden back to the contestant merely because a fiduciary is also a family relation, we must acknowledge that our prior cases are not as clear as they might be on this proposition. Some cases state that there is a presumption of impropriety when an attorney transacts with his client, and that the attorney bears the burden of proving otherwise. See, e.g., *Pollock* v. *Marshall*, 391 Mass. 543, 559 (1984); *Barnum* v. *Fay*, 320 Mass. 177, 181 (1946); *Smith* v. *Smith, supra*; *Hill* v. *Hall, supra*. Other cases state that there is no presumption of fraud or undue influence, but fail to discuss burden of proof. See *Reilly* v. *McAuliffe*, 331 Mass. 144, 148 (1954) ("although there is no presumption of undue influence on an attorney's part, the law views the transaction with considerable jealousy"); *Mooney* v. *McKenzie*, 324 Mass. 685, 688 (1949) (same); *Wellman* v. *Carter*, 286 Mass. 237, 248 (1934) (same). See also *Heinrich* v. *Silvernail, supra* at 225 n.8. And still others discuss neither presumptions nor burdens of proof, but merely state that such transactions should be viewed with great suspicion. See, e.g., *Tarr* v. *Vivian*, 272 Mass. 150, 153 (1930) ("the law views the transaction with considerable jealousy"); *Neill* v. *Brackett*, 234 Mass. 367, 369 (1920) (if the "relation between the parties is fiduciary or

intimate, the transaction ordinarily is subject to careful scrutiny"). It seems to us that talk of a presumption of impropriety in this context is just another and less illuminating way of saying that the burden of proof is on the fiduciary. Rather, we now hold that the fiduciary who benefits in a transaction with the person for whom he is a fiduciary bears the burden of establishing that the transaction did not violate his obligations.

## III

Applying this analysis here, we conclude that the judge erred in his approach to the fiduciary duty claim.[4] The parties stipulated that in December, 1990, and January, 1991, the defendant owed a fiduciary duty to Mary by virtue of his position as her insurance agent, attorney-in-fact, and financial confidant. Although the judge's opinion states that "when a fiduciary benefits by a transaction with his client, the transaction presumptively is voidable and improper," it goes on to follow the *Markell* rule that a family relationship alters that presumption. This adoption of the *Markell* approach might have been dispositive. On the one hand, the plaintiff presented evidence, including that the APP-486 form may have been blank at the time that Mary signed it, that there were irregularities and overwrites on the form as submitted to the insurance company, and that the defendant explained very little to Mary at their January, 1991, meeting, that would support a conclusion that the defendant did not sustain his burden of establishing that he fulfilled his obligations to Mary.[5] On the other hand, the defendant may prevail despite his burden. He marshaled

---

[4]The plaintiff also takes exception to the judge's treatment of the fraud claim, particularly that the judge instructed the jury that the plaintiff bore the burden of proving fraud. The judge's handling of the fraud count was correct. Our holding today is limited to the burden of proof in an equitable action for breach of fiduciary duty.

[5]The judge noted in his findings of fact that the jury returned a special verdict on the fraud count in the defendant's favor, finding that Mary intended to make the defendant her beneficiary when she signed the APP-486 form. The judge correctly stated that "the jury's special verdict does not dictate how this court must rule on the remaining counts," but went on to "adopt" the jury's verdict as a finding of fact. Given the different burdens of proof on the fraud count and the fiduciary duty count, this was error and may well have affected the result. Although the judge may ultimately agree with the jury's conclusion, he must consider the question anew under the burden of proof appropriate for the cause of action he has reserved in equity.

evidence that the plaintiff had long neglected Mary, that Mary favored the defendant and expressed her preference to others, and that Mary had made him her executor and attorney-in-fact, as well as her beneficiary under another insurance policy, all of which indicated that she preferred the defendant to the plaintiff. Because of the error on the burden of proof on the fiduciary duty count, however, we must remand that count to the Superior Court.

## IV

### A

The plaintiff also sued in contract, alleging that the defendant's actions in changing the beneficiary on annuities S56 and S57 breached the terms of the policies between Mary and New England Mutual Life. The plaintiff contends that the judge committed two errors regarding the breach of contract claim. First, the plaintiff argues that the judge improperly allocated the burden of proof to him on this claim. Second, the plaintiff claims that the judge erred in holding that G. L. c. 175, § 123, was inapplicable to his breach of contract claim.[6] We do not reach either issue, because the plaintiff may not bring an action in contract against the defendant for an alleged breach by New England Mutual Life of the change of beneficiary provisions in the annuity policies. Instead, the plaintiff should have sought relief from the insurer directly, and the insurer could then have involved the defendant by interpleader. See generally *Kochanek* v. *Prudential Ins. Co.*, 262 Mass. 174, 177-178 (1928) (allocating burden of proof in such action). See also *Finegan* v. *Prudential Ins. Co.*, 300 Mass. 147, 150 (1938); *Rowen* v. *Kiewlicz*, 4 Mass. App. Ct. 784 (1976). Any breach of contract, or of G. L. c. 175, § 123, was committed by the insurer, and a third-party beneficiary can only maintain his action against the party in breach.

---

[6]General Laws c. 175, § 123, provides that a life insurance company shall not accept a written request to change the beneficiary on a policy unless the signature of the insured was "witnessed by a disinterested person." The plaintiff argues that in this case the statute was not followed, and thus that the change in beneficiary should be void. The judge held that "§ 123 explicitly excludes annuity contracts" from the requirement of a disinterested witness, and thus he did not consider its provisions. Although it may be that *some* annuities, particularly those that differ from pure endowment contracts, see *Curtis* v. *New York Life Ins. Co.*, 217 Mass. 47 (1914), are not exempt from G. L. c. 175, § 123, we need not reach that issue here.

B

The plaintiff also claims that the judge improperly allocated the burden of proof regarding the G. L. c. 93A claim. Under G. L. c. 93A, § 2, the plaintiff must show that the defendant has engaged in an "unfair or deceptive act[] or practice[] in the conduct of . . . trade or commerce." Although the defendant bears the burden of proof in defending against the fiduciary duty claim, the plaintiff bears the burden, assuming arguendo that a breach of fiduciary duty occurred, of proving that such breach constituted a violation of c. 93A. The judge may, however, revisit the plaintiff's c. 93A count after reconsidering the fiduciary duty count under the proper burden of proof.

V

The judgment is affirmed in part and reversed in part, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*