## IN THE MATTER OF THE ESTATE OF NATHAN N. SOUTHWICK.

No. 05-P-1146.

Barnstable. May 3, 2006. - July 17, 2006.

Present: GRASSO, KAFKER, & GREEN, JJ.

*Probate Court,* Report. *Attorney at Law,* Attorney-client relationship, Drafting of will. *Rules of Professional Conduct.*

General Laws c. 215, § 13, which permits a judge of the Probate and Family Court to "reserve and report the evidence and all questions of law therein" to the Appeals Court, and which also permits the judge to report questions following an interlocutory judgment, decree, or order, did not, in the absence of a judgment, decree, or order, authorize the judge's report of a specific question of law arising in the instant case. [744-746]

This court expressed the view that the enactment of Mass.R.Prof.C. 1.8(c), 426 Mass. 1339 (1998), did not impose either a retroactive prohibition on an attorney's drafting of a will that gave the attorney a substantial gift or an obligation to revisit with the client the circumstances of an already executed document; further, even if the attorney's conduct could be said to have violated an applicable disciplinary rule, such a violation would only be evidence of a breach of professional duty, and not a determination that the lawyer had breached his duty and that the transaction had to be undone. [746-748]

PETITION filed in the Barnstable Division of the Probate and Family Court Department on June 23, 2000.

A question of law was reported to the Appeals Court by *Robert A. Scandurra,* J.

*Richard W. Renehan (Patrick M. Curran, Jr.,* with him) for James R. Julian.

GRASSO, J. A judge of the Probate and Family Court reports the following question in connection with an application for allowance of the first and final accounting of the executor of an estate:

"Does [the attorney's] breach of professional duty rise

to the level that it would invalidate the bequests to him as a devisee and legatee under the will of the decedent, thus precluding the allowance of the First and Final Accounting of the estate?"

1. *Background.* The factual background, as set forth in the judge's report and findings of fact, is not in dispute. In 1994, the decedent requested that the attorney prepare his last will and testament. In accordance with the decedent's instructions, the attorney drafted a will that bequeathed the decedent's stock in General Electric Company to Bentley College, the decedent's alma mater, and named the attorney as executor and residuary legatee of the remainder of the estate. The decedent, whose competence is not at issue, executed the will on June 18, 1994.[1] He died on May 18, 2000, leaving no known heirs at law or next of kin.

On June 26, 2000, the attorney petitioned for probate of the will without sureties.[2] The probate judge allowed the will and appointed the attorney executor, without objection, on September 25, 2000. On October 15, 2001, the attorney filed an affidavit of notice to devisees and legatees that listed Bentley College and the attorney as the only beneficiaries under the will. On September 5, 2002, the attorney filed a first and final accounting, together with a release of all demands and general assent to the accounting of Bentley College. The Attorney General's office, division of public charities, also filed a general assent to the accounting.

Among other disbursements, the accounting showed two payments to the attorney — one for $50,000 represented executor's

---

[1]The will was a so-called "self-proving" will signed by the testator and the witnesses in the presence of each other, and sworn before a notary public. The testator declared to the notary and to the witnesses that the instrument was his will, that he willingly signed it, and that he executed it as his free and voluntary act for the purposes therein expressed. The witnesses, one of whom was the testator's neighbor, stated to the notary in the testator's presence and the presence of each other that, to the best of their knowledge, the testator was of legal age, of sound mind, and under no constraint or undue influence. See G. L. c. 192, § 2.

[2]The petition indicated that the decedent had no heirs at law or next of kin. A notice of probate published in the Cape Cod Times did not elicit any responses from putative heirs. The attorney also reviewed the decedent's correspondence, but did not ascertain any heirs.

and attorney's fees; the other, in the amount of $791,150.58, represented the residue of the estate.[3] When the first and final accounting came before the court for approval in October, 2003, the judge, sua sponte, entered an order (with notice to the Attorney General's office, division of public charities) for the attorney to appear and explain the executor's and attorney's fees charged, as well as the distribution to himself as residuary legatee.

An evidentiary hearing followed at which the judge inquired into the circumstances surrounding the drafting and execution of the will and the events that followed until the testator's death. In particular, the judge inquired whether the attorney had taken any action vis-à-vis the testator after the adoption of Mass.R.Prof.C. 1.8(c), 426 Mass. 1339 (effective January 1, 1998), which provides that "[a] lawyer shall not prepare an instrument giving the lawyer . . . any substantial gift from a client, including a testamentary gift, except where the client is related to the donee."

The judge made findings of fact that we summarize as follows. The attorney is not related to the decedent. He first met the decedent in 1986 when he represented the decedent in a real estate purchase. They had no further contact until 1991, when the decedent's neighbors contacted the attorney and informed him that the decedent had been admitted to Cape Cod Hospital. The attorney visited him in the hospital and, at the decedent's request, became his attorney-in-fact. The attorney assisted the decedent in recovering the proceeds of a travel insurance policy and arranged for his discharge from the hospital to a nursing facility. The decedent remained in the nursing facility for twenty-one months, where the attorney visited him as frequently as twice per week.

With the attorney's assistance, the decedent was able to move from the nursing facility to his own home. With the decedent's funds, the attorney arranged for renovations to make the decedent's home handicapped accessible and permit the decedent to live independently. The attorney also purchased a

---

[3]Bentley College received stock in General Electric Company valued at $240,550.

motorized device that enabled the decedent to move around his neighborhood and visit neighbors.

In 1994, the decedent asked the attorney to draft his will and expressed his desire to name Bentley College and the attorney as the sole beneficiaries. In response to this request, the attorney did not recommend that the decedent seek independent legal advice. Rather, he asked the decedent, "Are you sure? Isn't there somebody else out there that you want to remember?"[4]

When the attorney drafted the will in 1994, the Canons of Ethics and Disciplinary Rules Regulating the Practice of Law provided that, "except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests." S.J.C. Rule 3:07, Canon Five, DR 5-101(A), as appearing in 382 Mass. 779 (1981). The attorney was not familiar with that disciplinary rule (or, we assume, with American Bar Association Ethical Consideration 5-5).[5]

On February 1, 1995, subsequent to execution of the will, the Supreme Judicial Court adopted Canon Five, DR 5-108(A), 419 Mass. 1302, prohibiting a lawyer from drafting any instrument that gave the lawyer "any substantial gift from a client, including a testamentary gift, except where the client is related to the donee." The attorney was unfamiliar with that disciplinary rule when enacted in 1995, or as codified thereafter.[6]

From 1996 until the decedent's death, the attorney coordinated

---

[4]At the time he drafted the will, the attorney did not know the exact value of the decedent's estate.

[5]In adopting the pertinent Canons of Ethics and Disciplinary Rules Regulating the Practice of Law, the Supreme Judicial Court stated that "[t]he Ethical Considerations as appearing in the American Bar Association [ABA] Code of Professional Responsibility and Canons of Judicial Ethics (1970) are not adopted as a rule of this court, but those Ethical Considerations form a body of principles upon which the Canons of Ethics and Disciplinary Rules . . . are to be interpreted." 382 Mass. 769.

Ethical Consideration 5-5 of the ABA Code of Professional Responsibility specifically advised that "[o]ther than in exceptional circumstances, a lawyer should insist that an instrument in which his client desires to name him beneficially be prepared by another lawyer selected by the client."

[6]In 1998, this disciplinary rule was codified as Rule 1.8(c) of the Mas-

the various medical and social services that were necessary to permit the decedent to live independently. The attorney or members of his office staff would visit the decedent's home at least weekly to check on his well-being and to perform chores such as grocery shopping and trash disposal. The attorney also attended to other matters, including tax preparation and prepayment of the decedent's funeral and burial expenses. At the decedent's interment, only the attorney and the funeral director were present. After the decedent's death, the attorney attempted to locate possible heirs through the death records of the decedent's parents.[7] He also reviewed the decedent's correspondence. In offering the will for probate, the attorney followed all legal requirements for publication, and two months' notice failed to elicit any responses.

Based on the foregoing factual findings, the judge concluded that the changes in bar disciplinary rules subsequent to execution of the decedent's will imposed a duty on the attorney to contact his client, advise him of the change, and notify him that if he still wished to benefit the attorney on his death, he should seek out independent counsel and draft a new will to that effect. Predicated on this finding, and the implicit conclusion that the attorney's conduct constituted a breach of professional duty, the judge reported the question whether that breach of duty rises to such level as to invalidate the residuary bequest to the attorney and preclude approval of the first and final accounting. Because the decedent apparently died leaving no heirs at law and next of kin, the residuary estate would escheat to the Commonwealth should the decedent's bequest of the residue to the attorney be invalidated. See G. L. c. 190, § 3(7).

2. *Discussion.* The matter comes before us in a peculiar posture. The question reported by the judge, and the underlying examination of the attorney's conduct, does not arise in the context of an adversary proceeding. This is not a case in which heirs at law and next of kin, or other natural objects of the testator's bounty, contest his will as being the product of undue influence. See, e.g., *Tarricone* v. *Cummings*, 340 Mass. 758,

---

sachusetts Rules of Professional Conduct, 426 Mass. 1339.

[7]Although the attorney was aware of an aunt who had predeceased the testator, he did not know the aunt's name.

762 (1960). See also *Mooney* v. *McKenzie,* 324 Mass. 685, 687-688 (1949), *S.C.,* 327 Mass. 760 (1951). Nor is there any suggestion whatsoever that the testator was not fully competent. Indeed, no one, other than the judge, sua sponte, has questioned the executor's accounting. The Attorney General's office declined a request from this court to file a brief and participate in this proceeding.[8]

We assume, without deciding, that even absent objection by any party, a probate judge to whom an account is presented for allowance has the authority to undertake the inquiry that the judge did here. See G. L. c. 206, §§ 3, 24 (setting forth the powers of a probate judge in allowance of accounts, and notice requirements); *Matter of the Trusts Under the Will of Crabtree,* 440 Mass. 177, 189-190 (2003) (under G. L. c. 206, § 1, Probate and Family Court retains supervisory control over trustee it has appointed and may examine him under oath on matters relative to his accounts under G. L. c. 206, § 3). We note that a number of thorny questions arise when a judge undertakes both an inquisitory and fact-finding role without the traditional safeguards of adversary presentation. We need not resolve these difficulties, however, because we conclude that the judge's report is procedurally deficient and must be discharged. See *Dorfman* v. *Allen,* 386 Mass. 136, 138 (1982).

"General Laws c. 215, § 13, as amended through St. 1975, c. 400, § 59, . . . states that '[a] judge of the probate court by whom a case or matter is heard for final determination may reserve and report the evidence and all questions of law therein for consideration of the appeals court.' It also permits him to report questions following an interlocutory judgment, decree, or order. However, in the absence of a judgment, decree, or order, as here, § 13 'does not authorize a report of a part of a case or of specific questions of law arising therein. The report must be of the entire case and in such form that this court can enter or order the entry of a final decree disposing of the case.' *Curran,*

---

[8]The Attorney General's office also inquired whether the Board of Bar Overseers (BBO) would be interested in intervening or otherwise briefing the matter. We are advised that the BBO declined to participate as a party and has assigned the matter to assistant bar counsel for investigation as a separate disciplinary grievance.

*petitioner*, 314 Mass. 91, 94 (1943)." *Dorfman* v. *Allen*, 386 Mass. at 138. Here, the judge reported a specific question of law. He did not report the entire case, nor did he make, or report, an interlocutory decree, order, or judgment. Rather, he posed to us an abstract question of law. See *Cusic* v. *Commonwealth*, 412 Mass. 291, 293-294 (1992) (discharging report that presents abstract question of law for decision). Thus, his report must be discharged. See *Gray* v. *Commissioner of Rev.*, 422 Mass. 666, 667-668 (1996) (authority of probate judge to report case derives from G. L. c. 215, § 13, and absent interlocutory ruling or order, report must be of entire case or case must be discharged). See also *Ellis* v. *Ellis*, 413 Mass. 1003, 1004 (1992) (second sentence of G. L. c. 215, § 13, permits report only where interlocutory order so affects merits of controversy that matter ought to be determined by Appeals Court before further proceedings). Because of the peculiar procedural posture of the case and the absence, at present, of objection by anyone other than the judge, we are unable to resolve definitively whether the judge would be warranted in refusing to allow the account and invalidating the bequests to the attorney under the will. Nevertheless, because we consider the reported question to rest on a flawed premise, we state our views on whether the enactment of Mass.R.Prof.C. 1.8(c) imposed a retroactive obligation on the attorney, the violation of which would constitute a breach of fiduciary duty that would invalidate the residuary bequest to the attorney.[9] See *Dorfman* v. *Allen*, 386 Mass. at 138; *Gray* v. *Commissioner of Rev.*, 422 Mass. at 668.

Underlying the reported question are subsidiary determinations that (1) amendments to the Canons of Ethics and Disciplinary Rules and the Massachusetts Rules of Professional Conduct in 1995 and 1998 imposed a duty on the attorney to advise the testator to seek out independent counsel to redraft his previously executed will; and (2) failure to do so amounted to a breach of the attorney's professional duty. Conspicuously absent,

---

[9]The judge did not address, nor do we, whether the attorney's original drafting of the will in 1994, without referral to an independent attorney, amounted to a violation of a then-existing disciplinary rule or a breach of professional duty to the client.

however, is any citation to legal authority supporting the judge's subsidiary determinations.

Disciplinary rules operate prospectively, not retroactively. See Mass.R.Prof.C. Scope [5], as appearing in 426 Mass. 1307 (1998) (assessment of lawyer's conduct made on basis of facts and circumstances existing at time of conduct in question). Prior to 1995, no disciplinary rule specifically prohibited a lawyer from drafting an instrument that gave the lawyer a substantial gift. The conflict of interest arising from such representation fell within the ambit of former Canon Five, DR 5-101, as appearing in 382 Mass. 779 (1981), which "prohibited lawyers from accepting employment if the lawyer's professional judgment on behalf of the client would or reasonably might have been affected by her own financial or personal interests unless she had obtained the client's informed consent."[10] Nancy Kaufman, Where There's a Will . . . (April 2001), at http://www.mass.gov/obcbbo/will.htm (last visited July 13, 2006). Nothing in the amendments to the disciplinary rules or rules of professional conduct suggests or imposes a retroactive prohibition on the attorney's drafting of such an instrument or an obligation to revisit with the client the circumstances of an already executed document. Moreover, even if the attorney's conduct and failure to advise the client subsequently regarding an already-executed will may be said to have violated an applicable disciplinary rule, such a violation is only evidence of a breach of professional duty, not, ipso facto, a determination that the lawyer has breached his professional duty and that the transaction must be undone. See *Fishman* v. *Brooks*, 396 Mass. 643, 649 (1986) ("A violation of a canon of ethics or a disciplinary rule . . . is not itself an actionable breach of duty to a client"). As noted previously, this is not a case where an adversary is challenging the testator's will as the product of the fraud or undue influence of the attorney. Were that so, there would be clear basis for imposing on the attorney the burden of establishing that the transaction did not violate his professional obligations. See *Cleary* v. *Cleary*, 427 Mass. 286, 290-291 (1998). However, even in the context of a challenge to a will on the ground of undue influence where a fiduciary such as an at-

---

[10]See also ABA Ethical Consideration 5-5, at note 5, *supra.*

torney benefits, there was in 1994 "no per se rule that an attorney must advise his client to seek independent advice in such circumstances. Instead, his failure to do so is merely evidence that the transaction was not fair and that the attorney violated his fiduciary duty." *Id.* at 291. See *Pollock* v. *Marshall*, 391 Mass. 543, 555-557 (1984).

Absent a challenge by an adversary party, on the present record and the facts found here, we discern no basis for concluding that the testator did not make the bequest with full knowledge and intent. See *Cleary* v. *Cleary*, 427 Mass. at 291. However, we are also unable to conclude that he did. We would have greater confidence that there is no basis for such a challenge were a disinterested neutral without a direct financial interest in the estate to have made the determination that there are no heirs at law or next of kin who wish to challenge the attorney's status as executor and residuary beneficiary. See G. L. c. 206, § 24; *Matter of the Trusts Under the Will of Crabtree*, 440 Mass. at 190-194 & n.30 (discussing judge's statutory authority to order notice and appoint a guardian ad litem in certain circumstances). See also *Lynde* v. *Vose*, 326 Mass. 621, 623 (1951) (improper to appoint guardian ad litem to represent interests of deceased person). Such a determination would provide assurance to the judge considering allowance of the account, and to this court, that reasonable efforts have been made to ascertain whether a potential challenger exists by a disinterested person who, unlike the attorney here, has no direct financial interest in the estate. On the other hand, the alternative suggested by the judge, invalidating a residuary bequest and escheating the residue to the Commonwealth, risks operating in derogation of the expressed wishes of a competent testator.[11]

*Report discharged.*

---

[11]A separate matter altogether is whether the attorney violated the applicable Massachusetts Rules of Professional Conduct (see S.J.C. Rule 3:07 and predecessor rules), and the appropriate discipline for any violation so found. See S.J.C. Rule 4:01, § 4, as appearing in 425 Mass. 1304 (1997) (disbarment, resignation, suspension, public reprimand by the BBO or admonition by bar counsel).