IN THE MATTER OF THE ESTATE OF ALICE R. SHARIS.

No. 12-P-693.

Suffolk. March 20, 2013. - June 28, 2013.

Present: VUONO, RUBIN, & SULLIVAN, JJ.

*Will,* Testamentary capacity, Undue influence. *Undue Influence.*

In an action challenging a will on the grounds of lack of testamentary capacity and undue influence, the decedent's grandson, who was a fiduciary under a broad durable power of attorney, had near-complete control of the decedent's finances, and played an instrumental role in arranging for the will to be drafted and executed, did not meet his burden to prove that the will was not the product of undue influence, where the evidence supported the conclusion that the decedent lacked the advice of independent counsel [842-844], where the grandson failed to prove that the decedent was fully informed and independently made the bequests at issue [844], and where the decedent's advanced age, lack of familiarity with wills, and seventh-grade education, coupled with the grandson's near-complete control of her finances, permitted the inference that she was susceptible to his influence [844-845]; further, the judge's conclusion of self-dealing was not against the weight of the evidence, and neither direct evidence nor evidence of appropriation of assets for personal use was required to support an inference of undue influence [845-846].

PETITION for probate of a will filed in the Suffolk Division of the Probate and Family Court Department on April 14, 2010.

The case was heard by *John M. Smoot,* J.

*Jonathan D. Plaut* for Richard Spinelli.

*Andrew G. Bunnell* for Florence Cavallaro.

SULLIVAN, J. Richard Spinelli appeals from a decision of a judge of the Probate and Family Court disallowing the will of his grandmother, Alice R. Sharis (Alice),[1] on the grounds of lack of testamentary capacity and Spinelli's undue influence. We discern no error in the judge's conclusions that Spinelli was

---

[1]We refer to Alice Sharis and her husband, Peter, by their first names in order to avoid confusion.

a fiduciary, and that the will was the product of undue influence. Accordingly, we affirm the judgment.[2]

1. *Background.* Born in 1916, Alice came to the United States from Turkey when she was twelve years old, and completed the seventh grade. She had three daughters, Virginia, Louise, and Florence, with her first husband, whom she divorced in 1959. She had sixteen surviving grandchildren and several great-grandchildren. The decedent married her second husband, Peter, in 1961. Peter, who predeceased Alice by thirteen months, suffered from Alzheimer's disease in the last years of his life and lived in a nursing home during the last six months of his life.

Spinelli is one of Alice's grandchildren. After separating from his wife in November, 2003, he asked Alice and Peter if he could move into their home. He remained there through Peter's illness and death and the death of Alice on February 13, 2010. He made no monetary contributions to the upkeep or running of the home, but he did drive Alice to medical appointments and other destinations.

The judge found that Spinelli gained nearly complete control of Alice and Peter's checking account between 2006 and 2008. Spinelli signed Peter's name to 119 checks between March 4, 2006, and February 4, 2008.[3] Alice complained to one of her daughters and a granddaughter that she did not know where her money or checks were. On June 30, 2007, Alice signed a durable power of attorney, prepared by Spinelli, that took effect immediately and gave Spinelli broad powers.

Spinelli did not inform other family members of the power of attorney, or that he was signing checks on his grandparents' accounts. In February or March of 2008, Spinelli contacted an attorney, had an initial meeting, and inquired whether the at-

---

[2]Because of the result we reach on the claim of undue influence, we need not address whether the decedent possessed testamentary capacity at the time she executed her will.

[3]He did not have the authority to sign Peter's name, nor did he have signature authority in his own name. Spinelli does not challenge these findings. Spinelli's name first appears on the February 4, 2008, statement. The judge considered his testimony regarding the signing of checks in Peter's name to be "evasive and duplicitous." The judge did not find, however, any evidence of misappropriation of funds from this account.

torney could draft a will for his grandmother.[4] The attorney, a corporate lawyer who had been in practice approximately four years at that time, did not meet with Alice in person, and could not remember what she told him regarding the disposition of the assets of her estate. He called her at Spinelli's urging, had a short intake telephone conversation with her, and then assigned the actual drafting of the will to an associate in his office. The associate who actually drafted the will communicated by electronic mail (e-mail) only with Spinelli. There is no evidence that the associate communicated directly with Alice. Once the will was drafted and sent to Alice, the attorney conducted a brief, two-minute telephone conversation with her. No attorney reviewed the terms of the will in person with Alice, nor did an attorney attend the execution of the will. There is no evidence that either the attorney or the associate inquired, or that Alice explained, why she would favor Spinelli over her daughters and other grandchildren.

On July 23, 2008, Spinelli took Alice to the nursing home where her husband was a patient. She executed her will there, with nursing home staff as witnesses. Spinelli was nearby when the will was executed but was not in the room. The employees who witnessed the will did not observe any behavior that caused them to question whether Alice executed the will of her own free will.

The will provides that all of the Alice's assets be distributed to her husband, Peter, should he survive her. If not, the house and all of the assets and property contained therein were to go to Spinelli, along with all her stocks and securities. Her savings and checking accounts were distributed equally to her three daughters. The residuary was distributed equally among her three daughters and Spinelli.

Following the execution of the will, in September of 2008, Spinelli opened a checking account in his name in trust for Peter and Alice. Between September, 2008, and the date Alice died in February of 2010, the judge found, and Spinelli does not dispute, that he transferred $71,450 from the checking account to the trust account, and that substantial sums were then expended

---

[4]The attorney who prepared the will is different from counsel on the appeal.

from the trust account. The judge found these transfers had the effect of disrupting Alice's bequest of her checking and savings accounts to her daughters. The judge found that Spinelli, who testified at trial, was not credible on key issues, including his control over bank accounts, his control over Alice's finances, and the circumstances under which he obtained the power of attorney.

2. *Discussion.* One of the decedent's daughters, Florence, brought this action contesting the will on grounds of lack of testamentary capacity and undue influence. Spinelli argues that the facts found by the judge do not support the inference that Spinelli unduly influenced his grandmother. We review the judge's findings for clear error, *Goodman* v. *Atwood*, 78 Mass. App. Ct. 655, 658 (2011), giving considerable respect to the judge's assessment of the testimony. *Matter of the Estate of Moretti*, 69 Mass. App. Ct. 642, 651 (2007).

"Any species of coercion, whether physical, mental or moral, which subverts the sound judgment and genuine desire of the individual, is enough to constitute undue influence." *Neill* v. *Brackett*, 234 Mass. 367, 369 (1920). A claim of undue influence is comprised of four elements: "(1) an unnatural disposition has been made (2) by a person susceptible to undue influence to the advantage of someone (3) with an opportunity to exercise undue influence and (4) who in fact has used that opportunity to procure the contested disposition through improper means." *O'Rourke* v. *Hunter*, 446 Mass. 814, 828 (2006) (citations omitted). *Hernon* v. *Hernon*, 74 Mass. App. Ct. 492, 497 (2009).

While the burden of proof ordinarily rests with the party contesting the will, a "fiduciary who benefits in a transaction with the person for whom he is a fiduciary bears the burden of establishing that the transaction did not violate his obligations." *Cleary* v. *Cleary*, 427 Mass. 286, 295 (1998). Spinelli does not contest the finding that he had a fiduciary relationship with Alice. Spinelli was the decedent's fiduciary under a broad durable power of attorney; he had near complete control of Alice's finances, and played an instrumental role in arranging for the will to be drafted and executed. It was therefore his burden to prove that the will was not the product of his undue influence.

See *Matter of the Estate of Moretti, supra*; *Germain* v. *Girard*, 72 Mass. App. Ct. 409, 413-414 (2008).

a. *Independent counsel.* Spinelli contends that Alice had the advice of independent legal counsel and this fact alone militates against the undue influence as a matter of law. The rationale for shifting the burden to a fiduciary who benefits from a transaction with his principal is that "[t]he fiduciary can take precautions to ensure that proof exists that the transaction was fair and that his principal was fully informed, and he is in the best position after the transaction to explain and justify it." *Matter of the Estate of Moretti, supra* at 653, quoting *Cleary* v. *Cleary, supra* at 293. See *Germain* v. *Girard, supra* at 412-413. "[T]he burden to prove the transaction was fair 'is generally met if the fiduciary shows that the principal made the request with full knowledge and intent . . . or with the advice of independent legal counsel.' " *Rempelakis* v. *Russell*, 65 Mass. App. Ct. 557, 569 (2006) (citation omitted). One of the functions of independent counsel is to provide documentation that the making and execution of a will is voluntary and knowing, thus lending transparency and credibility to the bequest.

The judge's finding that Alice lacked the advice of independent counsel is supported by the record. Spinelli selected the attorney, communicated with the drafting attorney by e-mail, filled in certain terms, and transported Alice to her husband's nursing home for the execution of her will. Strikingly, Alice never met the attorney in person and communicated with him briefly only twice by telephone. There is no evidence that the associate who drafted the will ever spoke with Alice; she communicated by e-mail with Spinelli. No attorney reviewed the terms of the will with Alice. Only Spinelli did so. Significantly, the decedent had no prior wills and there was no evidence that she was familiar with wills or their terminology. The attorney could not recall the specifics of his conversation with Alice or any specific advice he offered her with respect to the dispositions in her will. There was testimony at trial that Alice claimed to have no will. On this record, the judge's finding that the decedent lacked the benefit of independent advice of counsel was not clearly erroneous. See *Bessom* v. *Bayrd*, 282 Mass. 58 (1933); *Doggett* v. *Morse*, 299 Mass. 383 (1938). Compare *Foley*

v. *Philbrook*, 300 Mass. 418, 423 (1938) (will prepared by "a lawyer of high standing at the bar from instructions given him by the deceased, personally"); *O'Rourke* v. *Hunter, supra* at 826 (attorney reviewed various options available to testator regarding disposition of home); *Rostanzo* v. *Rostanzo*, 73 Mass. App. Ct. 588, 605 (2009) (attorney rendered "professional and sound advice regarding the disposition of [the testator's] assets upon his death").

b. *Secrecy.* There was an aura of secrecy surrounding the estate planning, as no one in the family, other than Spinelli, was aware that Alice had executed a will before her death.[5] The judge was not required to credit Spinelli's testimony that Alice requested that he keep the existence of the will confidential; in view of the judge's credibility findings it is clear that he did not do so. Although the judge found that the witnesses to the will did not observe any signs of duress or undue influence, the will was neither read in front of them nor was there any discussion of its terms during the execution. Compare *Rempelakis* v. *Russell, supra* at 560-564. Spinelli alone was in a position to ensure that there was proof that Alice was fully informed and independently made the bequests at issue. See *Matter of the Estate of Moretti, supra* at 652-653. There was no error in the judge's finding that he failed to do so.

c. *Susceptibility.* Although Spinelli suggests that Alice was not susceptible to undue influence, her advanced age, lack of familiarity with wills, and seventh grade education, coupled with Spinelli's nearly complete control of her finances, among other factors, permit the inference that she was susceptible to his influence. See generally *Doggett* v. *Morse, supra* at 386-390; *Baxter* v. *Grasso*, 50 Mass. App. Ct. 692, 697 (2001); *Matter of the Estate of Moretti, supra* at 651-653. Spinelli clearly had the opportunity to exercise influence to his benefit. Notwithstanding that Spinelli lived with Alice during the last eight years of her life, the judge was not compelled to conclude that the dispositions made in Alice's will were natural. The judge did not credit evidence of a particularly close relationship between them. To the contrary, he found that Alice questioned why Spinelli needed

---

[5]Likewise, Spinelli did not tell his family about the power of attorney or the creation of the trust account.

to live with her and why he had stayed so long. Instead, the judge credited testimony of the relationship the decedent enjoyed with her children, grandchildren, and great-grandchildren, particularly her granddaughter and her great-granddaughter.[6]

d. *Sufficiency of the evidence.* Spinelli argues that there was no evidence of self-dealing while Alice was alive, and that the judge's conclusion was against the weight of the evidence. The weight of the evidence was for the trial judge. We find the facts enumerated above to be sufficient in and of themselves to support the conclusion that Spinelli did not meet his burden to prove that the will was executed without undue influence. "The conduct of a trusted advisor prior to the making of a will in which he is named as beneficiary may be such as to amount to undue influence voiding the will, without proof of specific acts of the advisor at the time the will was made." *Doggett* v. *Morse, supra* at 389-390.

In addition, the judge found that Spinelli's transfer of funds from the checking accounts into the trust account "disrupt[ed] Alice's bequest of her 'checking and savings accounts' to her daughters." Spinelli was unable adequately to explain where the money in the trust account went. Spinelli's failure to account fully for these funds was a proper matter of consideration for the judge, whose credibility findings we do not disturb. *Erb* v. *Lee,* 13 Mass. App. Ct. 120, 124 (1982). *Edinburg* v. *Edinburg,* 22 Mass. App. Ct. 199, 203 (1986), quoting from *New England Canteen Serv., Inc.* v. *Ashley,* 372 Mass. 671, 675 (1977).

It is true that there is no direct evidence that Spinelli unduly influenced the decedent. This is neither surprising nor telling. "In many instances a finding of undue influence rests largely on circumstantial evidence, since direct evidence of such influence is often difficult to establish." *Maimonides Sch.* v. *Coles,* 71 Mass. App. Ct. 240, 256 (2008), quoting *Miles* v. *Caples,* 362 Mass. 107, 112 (1972). Nor is there evidence that he emptied the trust account for his personal benefit. However, by depleting the checking account bequeathed to others, Spinelli preserved

---

[6]The granddaughter shared most holidays with her grandmother, tended her garden, and provided other services to her grandmother. The great-granddaughter lived with the decedent and her husband from birth to the age of five and assisted her great-grandmother while attending college.

those assets bequeathed to him. "The nature of fraud and undue influence is such that they often work in veiled and secret ways. The power of a strong will over . . . one weakened by disease, over-indulgence or age may be manifest although not shown by gross or palpable instrumentalities. . . . When the donor is enfeebled by age or disease, although not reaching to unsoundness of mind, and the relation between the parties is fiduciary or intimate, the transaction ordinarily is subject to careful scrutiny." *Neill* v. *Brackett*, 234 Mass. at 369. Neither direct evidence nor evidence of appropriation of assets for personal use before death was required to support an inference of undue influence. *Id.* at 370.

3. *Conclusion.* In sum, the judge's ruling that the decedent's will was the result of undue influence by Spinelli was not clear error. The judge permissibly found that Spinelli failed to meet his burden of proving that Alice, with full knowledge and intent, favored him over her children and other grandchildren without his undue influence.

*Decree affirmed.*