# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 4, 2016 Session

## SONYA MAE STANLEY v. COLIN RICHARD STANLEY

**Appeal from the Circuit Court for Davidson County**
**No. 06D2339   Phillip R. Robinson, Judge**

_____

**No. M2015-01964-COA-R3-CV – Filed December 30, 2016**

_____

This appeal arises from a father's petition to relocate with his minor children. The father sought to relocate to Oklahoma in order to work on his family's farm, which he hoped to eventually inherit. The father, as the parent spending the greater amount of time with the children, sent the children's mother a notice of intent to move. The father then filed a petition to relocate with the minor children to Oklahoma. The trial court concluded that, because he was the petitioner, the father bore the burden of proof on whether the move was for a reasonable purpose. After both parents presented their proof, the trial court denied the request to relocate. The court found the father lacked a reasonable purpose for the proposed move. Because we conclude the burden of proof rested with the mother, we vacate and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT and THOMAS R. FRIERSON, II, JJ., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Colin Richard Stanley.

Gere L. Beason, Nashville, Tennessee, for the appellee, Sonya Mae Stanley.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

Sonya Mae Stanley ("Mother") and Colin Richard Stanley ("Father") married in California in 1998. Later, the couple moved to Oklahoma where two children, Jace and

Savannah, were born of the marriage. In 2005, the family moved to Tennessee.

On August 26, 2008, the Circuit Court of Davidson County, Tennessee, entered a final decree that awarded Mother a divorce on the grounds of irreconcilable differences. The permanent parenting plan order named Mother the primary residential parent, but the parents split time with their two minor children equally.

In 2011, the court modified the parenting plan. After finding a material change in circumstance, the court designated Father as the primary residential parent. The modified parenting plan granted Father 255 days and Mother 110 days of parenting time.

Father sent Mother a notice advising that he intended to move back to Oklahoma with the children, which Mother acknowledged receiving on March 2, 2015, by certified mail. On March 11, 2015, Father, apparently proceeding under the mistaken belief that Mother was attempting to avoid receipt of the notice, filed a petition to relocate with the children. In the petition, Father explained his intention to work on a farm owned by his mother and step-father ("Paternal Grandparents") in Oklahoma.

Within thirty days of her receipt of the notice mailed by Father, Mother filed an "Answer to Father's Petition to Move Children to Oklahoma and Mother's Counter-Petition in Opposition to Father's Relocation with Children and Counter-Petition to Modify Parenting Plan/Change Custody or in the Alternative to Change Residential Parenting Schedule." Mother alleged that Father lacked a reasonable purpose for the move and that he had made misstatements in his notice letter. Mother also alleged that, since the order modifying the parenting plan, there had been a material change of circumstance justifying either a change of primary residential parent or in parenting time.

## A. PROOF AT TRIAL

The court held a trial on August 4, 2015. During the opening statement of Father's counsel, the court remarked that the burden of proof was on Father to establish a reasonable purpose. In the words of the court, "The burden is . . . always on the petitioner, and had the mother filed a petition in opposition, the burden would be on her to prove no reasonable purpose." In response to the court's remarks, counsel for Father indicated she was prepared to meet that burden.

Father's proof consisted of several witnesses, including himself, his new wife, his step-father, and the two children.[1] Mother's proof consisted of only two witnesses, herself and her new husband.

---

[1] Father also called Mother's ex-boyfriend to testify; however, his testimony primarily concerned Mother's parenting, which is not at issue on appeal.

Father testified that he expected to inherit the family farm owned by Paternal Grandparents and located in Pocasset, Oklahoma. On the farm, Paternal Grandparents breed horses and dogs for resale. Father explained his desire to move to Oklahoma in order to assist Paternal Grandparents with the day-to-day duties associated with running the farm. According to Father, Paternal Grandparents needed assistance because of their advanced age and his step-father's failing health.

Concerning his income, Father testified that he earned approximately $2,800 per month working as a truck driver. He claimed that Paternal Grandparents offered to pay him $2,500 per month to manage the family farm if he should move. However, according to Father, this reduced income would be offset by the lower cost of living in Oklahoma. Additionally, according to both Father and his new wife, Father's wife made approximately $60,000 per year as a registered nurse and would be able to obtain employment with the same salary in Oklahoma.

Father and his wife also gave details concerning their plans for the children's school and the family's housing. They both testified that they planned to purchase a home in the nearby city of Chickasha, Oklahoma, until they are able to build a home on the family farm. Father also asserted that the children would be able to attend a public school in Oklahoma that is comparable to the school they now attend in Tennessee.[2] According to Father, moving to Oklahoma is in his children's best interest because they would be nearer to Father's family, including their aunt, four cousins, and grandparents, and the children would also have the opportunity to work on the family farm.

Father's step-father, Dan Deerinwater, also gave details about Father's potential work on the family farm. Mr. Deerinwater confirmed that he and his wife had offered Father $2,500 per month to work on the family farm. He also confirmed that it was their intention to leave the farm to Father upon their passing.

Mr. Deerinwater testified that he and his wife needed to hire someone to manage the farm due to their age and health problems. Although they were currently assisted by a young woman in exchange for space to board her horses, he explained that Father's assistance was preferred because Father had experience training and breeding horses and will eventually inherit the business. Mr. Deerinwater further testified that he and his wife did not want to advertise for a farmhand because there is "a lot of trust involved in managing horses."

According to Mr. Deerinwater, the farm's yearly income totaled between $60,000

---

[2] Jace and Savannah attend a public school, and both children are involved in their school's Science Technology Engineering Mathematics ("STEM") program. According to Father, the Oklahoma high schools that his children would have the option to attend both offer comparable programs.

and $100,000, with the net profits being approximately half of that figure. He conceded that the farm was not his primary source of income. Mr. Deerinwater stated that he had worked for the Bureau of Indian Affairs for over 40 years, and he earned an annual salary of approximately $177,000 working as a regional director. He also testified that he received a military retirement pension and had federal retirement benefits as well.

Mr. Deerinwater admitted that he possessed the financial resources to hire someone other than Father to manage the farm. He also clarified that, regardless of whether Father moved to Oklahoma immediately to manage the farm, he would still receive his inheritance.

At the time of trial, Jace was 13 years old and Savannah was 11. The children testified that they wanted to move to Oklahoma with Father. Both explained that they looked forward to living closer to their cousins and grandparents and that they enjoyed working with the horses on the farm. However, they also expressed concern about living so far away from Mother. Savannah testified that Mother often came to the children's school to eat lunch with them. She also stated that Mother regularly attended the children's soccer games, even outside of Mother's parenting time. Jace testified that he felt torn about having to choose sides.

Finally, Mother testified concerning her involvement in her children's lives. She claimed that, besides taking advantage of the full amount of her allotted parenting time, she spent additional time with Jace and Savannah when permitted. According to Mother, she volunteered at the children's school, often ate lunch with the children on weekdays, and attended their soccer games and choir events on weeknights. Mother also testified that, under the parents' current arrangement, the children spent the majority of their summer break with her. Additionally, both Mother and her husband testified that the children had a good relationship with Mother's husband. Mother also stated that her husband was a positive role model for Jace and Savannah.

Mother also expressed concern over the children's ability to contact her while staying with Father. She claimed that, in the past, Father had only permitted the children to call her from his personal cell phone with his permission. Mother further claimed that the children had, at times, wanted to call her but were not permitted to do so.

## B. RULING OF THE TRIAL COURT

On September 2, 2015, the trial court entered an order both denying Mother's request to modify the parenting plan and Father's petition to relocate. Regarding Mother's petition, the court found an insufficient showing of a material change of circumstances to justify the modification of the primary residential parent. As a result,

4

the court dismissed Mother's counter-petition.[3]

As to Father's petition, the court determined that Tennessee Code Annotated § 36-6-108(d)(1)[4] governed because Mother conceded that the parties were not spending "substantially equal" intervals of time with the children. Consistent with its statements prior to the presentation of proof, "[t]he Court note[d] that because the Father is the Petitioner, the burden shifts to him regarding proving the necessary elements of relocation." The court also stated that the sole issue before it was whether Father's proposed relocation was for a reasonable purpose.

The court found that, under the circumstances, Father's relocation was not for a reasonable purpose. Specifically, the court emphasized that the relocation was not for "work purposes." Finally, because Father had indicated that he would not move without the children, the court left the parties' current parenting plan in effect.[5] Father filed his notice of appeal on September 29, 2015.

## II. ANALYSIS

Tennessee Code Annotated § 36-6-108, otherwise known as the Parental Relocation Statute, governs a parent's request to relocate outside the state, or more than 50 miles from the other parent within the state, with a minor child. Because the record reflects that Mother did not spend substantially equal intervals of time with the children, we agree with the trial court that the applicable statutory provision is Tennessee Code Annotated § 36-6-108(d)(1).

Tennessee Code Annotated § 36-6-108(d)(1) permits a parent spending the greater amount of time with the child to relocate, notwithstanding an objection by the other parent to the relocation, unless any one of three grounds is present. Specifically, the statute provides as follows:

> (d)(1) If the parents are not actually spending substantially equal intervals
> of time with the child and the parent spending the greater amount of time
> with the child proposes to relocate with the child, the other parent may,

---

[3] Mother does not appeal the trial court's dismissal of her counter-petition to modify the primary residential parent or residential parenting time.

[4] Tennessee Code Annotated § 36-6-108(d)(1) applies when "the parent spending the greater amount of time with the child proposes to relocate with the child." Tenn. Code Ann. § 36-6-108(d)(1) (2014).

[5] The trial court did reassess Mother's child support obligation. Finding her to be voluntarily underemployed, the court imputed income to Mother and increased her child support payment. Mother also does not appeal this decision.

within thirty (30) days of receipt of the notice, file a petition in opposition to removal of the child. The other parent may not attempt to relocate with the child unless expressly authorized to do so by the court pursuant to a change of custody or primary custodial responsibility. The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:

(A) The relocation does not have a reasonable purpose;

(B) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or

(C) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

Tenn. Code Ann. § 36-6-108(d)(1) (2014). However, even if one of the three grounds is proven, the court may still permit relocation "based on the best interest of the child." *Id.* § 36-6-108(e).

The trial court noted at the trial that, had Mother filed a petition in opposition to the relocation, she would bear the burden of proof that one of the three grounds was present. Yet, because Father filed a petition to relocate, the court concluded that Father bore the burden of proof.

Such a rule stems from the common law. In a case decided prior to the enactment of the Parental Relocation Statute, our supreme court held that, in parental relocation cases as in most cases, "the burden of proof f[ell] on the party who file[d] a petition seeking relief." *Taylor v. Taylor*, 849 S.W.2d 319, 332 (Tenn. 1993). The court went on to explain that

[i]n order to discharge that burden, the non-custodial parent who seeks to prevent removal must show by a preponderance of the evidence that removal is adverse to the best interest of the child or children involved. If, on the other hand, the custodial parent files for relief, seeking to lift a prior prohibition on removal or asking the court's permission to move from the jurisdiction, or both, the custodial parent has the burden of proving that removal is in the child's best interest. That burden can be shifted by a prima facie showing of a sincere, good-faith reason for the move and a prima facie showing that the move is consistent with the child's best interest.

6

*Id.*

The supreme court later revised the common-law rule in *Aaby v. Strange*, 924 S.W.2d 623 (Tenn. 1996). In that case, the court changed the rule to require the custodial parent seeking to relocate to "file a petition with the court to reapprove or revise, as the case may require, the existing visitation schedule." *Id.* at 630. The non-custodial parent could then "present evidence that the custodial parent's motives for moving [were] vindictive" or evidence concerning a change of custody. *Id.* If the non-custodial parent elected not to present such proof, the sole issue became "revision of the visitation schedule," and the burden of proof fell on neither party. *Id.* Instead, the trial court simply fashioned a revised visitation schedule in its discretion. *Id.*

Since the enactment of the Parental Relocation Statute, this Court has held that, if the parent seeking to relocate spends the greater amount of time with the child, the parent opposed to the relocation bears the burden of proving one of three statutory grounds found in Tennessee Code Annotated § 36-6-108(d)(1). *Rutherford v. Rutherford*, 416 S.W.3d 845, 849 (Tenn. Ct. App. 2013). We have described this holding as "well-established." *Redmon v. Redmon*, No. W2013-01017-COA-R3-CV, 2014 WL 1694708, at *7 (Tenn. Ct. App. Apr. 29, 2014). As a result, the common-law rule in these circumstances was altered such that the burden of proof falls on the non-custodial parent whether or not the non-custodial parent files the first petition.[6] *See Goddard v. Goddard*, No. E2011-00777-COA-R3-CV, 2012 WL 601183, at *10 (Tenn. Ct. App. Feb. 24, 2012) (finding father failed to meet his burden of proving grounds although mother filed petition to relocate).

In this case the trial court erroneously placed the burden on Father to prove that his relocation served a reasonable purpose, rather than placing the burden on Mother to show that the relocation did not serve a reasonable purpose.[7] Such a circumstance generally results in the case being remanded. *See Buzgheia v. Leasco Sierra Grove*, 70 Cal. Rptr. 2d 427, 438-41 (Cal. Ct. App. 1997) (concluding the trial court's jury instruction placing the burden of proof on the wrong party was prejudicial and remanding for further proceedings); *Brumbaugh v. Mellinger*, 120 N.E. 676, 677 (Ind. App. 1918) ("It is well settled that, as a general rule, the giving of an instruction which places the burden of an issue on the wrong party is reversible error."); *Germain v. Girard*, 892 N.E.2d 754, 758 (Mass. App. Ct. 2008) (vacating and remanding the decision of the probate court where the judge placed the burden of proof on the wrong party); *In re Guardianship of Reena D.*, 35 A.3d 509, 515 (N.H. 2011) (vacating and remanding the

---

[6] Mother did file a petition in opposition to the removal of the children, albeit after Father's petition to move the minor children to Oklahoma.

[7] Here, Mother did not allege that Father's motive for seeking to relocate was vindictive or that the relocation posed a threat of specific and serious harm to the children. Rather, she only argued that Father's proposed relocation did not have a reasonable purpose.

trial court's order in a child custody case where the court applied the incorrect burden of proof). *But see Wine v. Wine*, 245 S.W.3d 389, 395 (Tenn. Ct. App. 2007) (conducting a de novo review and ultimately reversing the trial court's determination in a child custody case where the court placed the burden of proof on the wrong parent). We conclude such a result is appropriate here, especially in light of the "legislatively mandated presumption in favor of [the] relocating custodial parent who spends substantially more time with the child than the non-custodial parent." *Collins v. Coode*, No. M2002-02557-COA-R3-CV, 2004 WL 904097, at *2 (Tenn. Ct. App. Apr. 27, 2004).

Additionally, although Father does not raise the issue on appeal, we note that the trial court failed to address the best interest analysis in its order. As mentioned above, Tennessee Code Annotated § 36-6-108(e) provides that "[i]f the court finds one (1) or more of the grounds designated in subsection (d), the court shall determine whether or not to permit relocation of the child based on the best interest of the child." Tenn. Code Ann. § 36-6-108(e). While the trial court made findings of fact and conclusions of law with regard to the reasonableness of Father's proposed relocation, it failed to address the statutory best interest factors.

Rule 52.01 of the Tennessee Rules of Civil Procedure states, in part, that "[i]n all actions tried upon the facts without a jury, the court *shall* find the facts specially and *shall* state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01 (emphasis added). We have repeatedly emphasized the importance of providing findings of fact and conclusions of law in accordance with Rule 52.01. *See, e.g.*, *Burnett v. Burnett*, No. M2014-00833-COA-R3-CV, 2015 WL 5157489, at *4-5 (Tenn. Ct. App. Aug. 31, 2015). The requirement of detailed findings of fact and conclusions of law is "not a mere technicality." *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009) (discussing a similar requirement found in Tenn. Code Ann. § 36-1-113(k)). Absent these findings, we are "left to wonder on what basis the court reached its ultimate decision." *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004). "Simply stating the trial court's decision, without more, does not fulfill this mandate." *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012).

When confronted with insufficient findings of fact, an appellate court is not without alternatives. One alternative is to vacate the decision and remand so that the trial court can make specific findings of fact and conclusions of law. *Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013). Another alternative is to conduct a de novo review of the record to determine where the preponderance of the evidence lies. *Id.* The appropriate alternative depends on the particular circumstances of the case, including the adequacy of the record, the fact-intensive nature of the case, and whether witness credibility determinations must be made. *See id.* (declining to conduct a de novo review because credibility determinations were necessary to resolve factual disputes); *Town of Middleton*

*v. City of Bolivar*, No. W2011-01592-COA-R3-CV, 2012 WL 2865960, \*26 (Tenn. Ct. App. July 13, 2012) (stating that independent review is appropriate when the case involves a legal issue or the court's decision is "readily ascertainable").

Because we find it necessary to remand the case for consideration of Father's purposes for relocating in light of Mother's burden of proof, we decline to conduct a de novo review of the record to determine the best interest of the children. On remand, if the trial court determines that Mother has satisfied her burden of proving one of the grounds designated in Tennessee Code Annotated § 36-6-108(d)(1), then it must further consider whether Father's proposed relocation is nonetheless in the children's best interest.

### III. CONCLUSION

In light of the foregoing, we conclude that the trial court erred by placing on Father the burden of proving the proposed relocation did have a reasonable purpose. Accordingly, we vacate the trial court's decision to deny Father's request to relocate with his children and remand for a new hearing on Mother's opposition to Father's request.

_____
W. NEAL MCBRAYER, JUDGE